59 So.3d 1234 (2011)
J-W POWER COMPANY
v.
STATE of Louisiana through the DEPARTMENT OF REVENUE & TAXATION.
No. 2010-C-1598.
Supreme Court of Louisiana.
March 15, 2011.
Rehearing Denied April 29, 2011.
*1235 Robert Frederick Mulhearn, Jr., Shone Therese Pierre, Donald Michael Bowman, Miranda Yvette Conner, Antonio Charles Ferachi, for Applicant.
Bradley Murchison Kelly & Shea, LLC, Hilary Aldama Wooley, David Richard Taggart, for Respondent.
WEIMER, Justice.
This matter is before the court for a determination of whether the court of appeal erred in finding that a dealer-collector of sales taxes may serve as an agent for its customers in connection with a demand for the refund of sales taxes paid under protest pursuant to LSA-R.S. 47:1576. For reasons that follow, we find the appellate court was correct in reversing the district court which had dismissed the plaintiff's action on the basis of no right of action. Accordingly, we affirm that portion of the court of appeal's decision from which the writ application was taken.

FACTUAL AND PROCEDURAL BACKGROUND[1]
J-W Power Company (Power), a Texas corporation, is a provider of gas-compression services in the oil and gas industry. As part of its business, Power entered into various full-service agreements with its customers in which Power agreed to provide the gas-compression services, including all labor, equipment, repairs, and maintenance necessary to achieve the customers' goals. J-W Gathering Company (Gathering) and J-W Operating Company (Operating) are customers of Power pursuant to full-service agreements.[2]
On December 2, 2004, the Louisiana Department of Revenue (Department) issued Revenue Ruling 04-009, which changed the Department's interpretation and application of LSA-R.S. 47:301(14) relative to gas-compression agreements. Pursuant to that ruling, Power's customers owed sales taxes on natural gas-compression services provided pursuant to full-service agreements. After the issuance of the Revenue Ruling, Power, as the selling dealer, was required to collect sales taxes from its *1236 customers on the full-service agreements and remit those taxes to the Department.
In its petition, Power alleged "by letters dated January 20, 2005, J-W [Power] protested the application and payment of the sales tax on the Full Service Agreements pursuant to La. R.S. 47:1576." Those letters identified the sales taxes in question, specifying amounts for December 2004 that had been paid to the state and certain parishes, set forth the basis of the dispute, gave "notice of the payment under protest by or on behalf of J-W" Power, and gave notice of "J-W [Power's] intent to file suit for refund." A second set of letters was sent on February 18, 2005, regarding protested payments made for January 2005.
On March 14, 2005, Power filed a petition for refund of sales taxes paid under protest pursuant to LSA-R.S. 47:1576. In its petition, Power prayed, in pertinent part, for a judgment declaring that its full-service agreements are non-taxable service agreements under LSA-R.S. 47:301(14) and awarding Power a refund of "all sales tax amounts heretofore and hereafter paid under protest to the State of Louisiana by or on behalf of J-W [Power] pertaining to the Full Service Agreements, with interest as allowed by law." The Department filed an answer on November 28, 2005.
Almost three years later, on July 7, 2008, the Department filed an exception of no right of action[3] based on the fact that Power was not the taxpayer and was, therefore, not entitled to seek a refund under LSA-R.S. 47:1576. In its memorandum opposing the exception, Power asserted that it was "prosecuting the refund portion of [its] action as the authorized representative of both J-W Gathering Company and J-W Operating Company, as well as the authorized representative of multiple third parties whose Full Service Agreements were eviscerated by Revenue Ruling 04-009." After a hearing, the district court granted the Department's exception but afforded Power the opportunity to amend its petition in order to remove the grounds for the objection.
In a supplemental and amending petition filed on May 14, 2009, Power further alleged:
J-W Gathering and J-W Operating expressly directed and authorized J-W Power Company to protest the application and payment of the sales taxes on the Full Service Agreements and designated J-W Power Company as their agent in fact for the payment under protest and the prosecution of the suit for refund on their behalf.
The supplemental and amending petition also disclosed that the sums referred to in the January 20, 2005, and February 18, 2005 letters to the Department included amounts attributable to Gathering and Operating, as well as various third parties. Power declared that it was seeking "to recover all amounts paid under protest for J-W Power Company, J-W Gathering, and J-W Operating in the principal amount of $1,002,081.92 through March 2009, and all amounts hereafter paid by J-W Power Company under protest." Furthermore, Power alleged that "J-W Power Company, for itself and its principals, J-W Gathering and J-W Operating, hereby waives, releases and withdraws its protest of the amounts attributable to third parties... and does not intend to prosecute this action for refund as it relates to the non-affiliated third parties." In its amended pleading, Power sought a judgment "[r]efunding to J-W Power Company, on behalf *1237 of its principals, J-W Gathering and J-W Operating, all sales tax amounts heretofore and hereafter paid under protest to the State of Louisiana by or on behalf of J-W Power Company, J-W Gathering and J-W Operating pertaining to the Full Service Agreements." Attached to the supplemental and amending petition was a spreadsheet detailing the amounts paid under protest, the period covered by the protest payment, the amounts paid by Power on behalf of Gathering and Operating, and the total amounts paid for unaffiliated third parties.
Also on May 14, 2009, Gathering and Operating filed a petition for intervention, alleging they "expressly directed and authorized J-W Power Company to protest the application and payment of the sales taxes on the Full Service Agreements and designated J-W Power Company as their agent in fact for the payment under protest and the prosecution of the suit for refund on their behalf." They further alleged:
beginning on January 20, 2005, J-W Power Company protested the application and payment of the sales tax on the Full Service Agreements pursuant to La. R.S. 47:1576 for its Louisiana Full Service Agreement customers, including specifically, J-W Operating and J-W Gathering. In each and every instance, J-W Power Company was authorized by and on behalf of J-W Gathering and J-W Operating to pursue such action for and on their respective behalf as their authorized agent. Those protest letters specifically identified the sales tax amounts disputed, set forth the basis of the dispute and gave notice of J-W Power Company's intent to file suit for refund.
Moreover, Gathering and Operating acknowledged that they are bound by the actions that Power performed in the capacity of their duly authorized agent. They added:
Pursuant to Louisiana Code of Civil Procedure article 694, J-W Gathering and J-W Operating specifically authorized J-W Power Company to act for and on their behalf as their agent and J-W Power Company in fact acted for and on their behalf in all actions taken in connection with the payment under protest of the disputed sales taxes and in the pursuit of the recovery of those amounts in this suit. Pursuant to governing law, including Code of Civil Procedure article 694, J-W Gathering and J-W Operating, as the principals, have been and are considered the plaintiff herein.
In their intervention, they prayed for a judgment "[r]efunding to J-W Gathering and J-W Operating all sales tax amounts heretofore and hereafter paid under protest to the State of Louisiana by or on behalf of J-W Power Company, J-W Gathering and J-W Operating pertaining to the Full Service Agreements."
The Department followed with another exception of no right of action, urging that the amendments to Power's petition did not remove the grounds for the objection as no authority under the tax laws enables Power to act as the agent for its customers, Gathering and Operating, in the giving of notice of the intention to file suit for the recovery of taxes paid under protest or the filing of such a suit. The Department also opposed the petition for intervention, urging that Gathering and Operating did not have any right to enforce in the suit for recovery of taxes paid under protest because neither entity had fulfilled the statutory prerequisites of LSA-R.S. 47:1576,[4] pertaining to the remittance of tax under *1238 protest and suits to recover protested taxes.
After a hearing on the Department's exception and its objection to the petition for intervention, the district court observed that the issues remained unchanged, i.e., the amendment to the pleadings did not remove the ground for the objection; therefore, the district court sustained the Department's exception and dismissed Power's suit with prejudice. By separate judgment, the district court denied the petition for intervention.
Power, Gathering, and Operating appealed both judgments, assigning as error the following determinations by the district court: Gathering and Operating could not designate Power as agent for purposes of protesting the tax payments; Power, Gathering, and Operating are not entitled to declaratory relief;[5] and Gathering and Operating could not intervene in the suit.
In reviewing the matter, the appellate court observed that at the time the taxes were paid to the Department, Power advised the Department by letter that the payment was made under protest. The Department was advised of a forthcoming suit, which was subsequently filed. Based on these facts, the appellate court found that Power satisfied the prerequisites of LSA-R.S. 47:1576: the payments had been made; notice was given to the Department that the payments were protested; and the suit against the proper party was filed. According to the appellate court, the fact that Power had not disclosed its agency relationship with Gathering and Operating when performing these acts did not preclude Power from asserting the agency relationship at a later date. Finding that Power had proven the existence of such a relation at the hearing on the Department's exception,[6] the appellate court concluded that "[t]here is no rational basis to refuse to allow a party to sue through an agent, even in a tax refund case, so long as the agent successfully complies with the statute so as to trigger the Department's requirement to escrow the disputed funds." J-W Power Company v. State of Louisiana through the Secretary of the Department of Revenue & Taxation, 09-2330, p. 9 (La.App. 1 Cir. 6/11/10), 40 So.3d 1214, 1219. The appellate court pretermitted the issue of declaratory relief and declined to consider the denial of Gathering and Operating's petition for intervention since they had not appealed that judgment, noting, however, that an intervention was not necessary since Power had a right of action. Accordingly, the appellate court reversed the district court's judgment, which had sustained the Department's exception and dismissed Power's suit, and remanded the matter to the district court for further proceedings.
We granted the Department's writ application assigning as error the appellate court's finding that LSA-C.C.P. art. 694 authorizes an agent to fulfill the procedural requirements of LSA-R.S. 47:1576 on behalf of its principals. J-W Power Company v. State of Louisiana through the Secretary of the Department of Revenue & Taxation, 10-1598 (La.10/29/10), 48 So.3d 1099.

DISCUSSION
"The function of an exception of no right of action is to determine whether *1239 the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit." Reese v. State, Dept. of Public Safety & Corrections, 08-1615, pp. 2-3 (La.2/20/04), 866 So.2d 244, 246. See LSA-C.C.P. art. 927. In examining an exception of no right of action, a court should focus on whether the particular plaintiff has a right to bring the suit while assuming that the petition states a valid cause of action for some person. Reese, 03-1615 at 3, 866 So.2d at 246. The exception of no right of action questions whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation. Id. Evidence is admissible on the trial of an exception of no right of action to "support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." LSA-C.C.P. art. 931.
Concerning the treatment of sales and use taxes by a dealer, LSA-R.S. 47:304 provides:
A. The tax levied in this Chapter shall be collected by the dealer from the purchaser or consumer. . . .
. . . .
C. Dealers shall, as far as practicable, add the amount of the tax imposed under this chapter in conformity with the schedule or schedules to be prescribed by the collector pursuant to authority conferred herein, to the sale price or charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts. Any dealer who neglects, fails or refuses to collect the tax herein provided, shall be liable for and pay the tax himself.
. . . .
E. Any dealer who fails, neglects, or refuses to collect the tax herein provided, either by himself or through his agents or employees, shall, in addition to the penalty of being liable for and paying the tax himself, be fined not more than one hundred dollars, or imprisoned for not more than three months, or both.
. . . .
For the purpose of collecting and remitting sales and use taxes to the state, the dealer is the agent of the state. See LSA-R.S. 47:306(A)(5).
Concerning the remittance of taxes under protest, LSA-R.S. 47:1576,[7] at all relevant times, provided, in pertinent part:
A. (1)(a) Except as otherwise provided in Subsection B of this Section, any taxpayer protesting the payment of any amount found due by the secretary of the Department of Revenue, or the enforcement of any provision of the tax laws in relation thereto, shall remit to the Department of Revenue the amount due and at that time shall give notice of intention to file suit for the recovery of such tax.
(b) In the case of sales or use taxes that are required to be collected and remitted by a selling dealer as provided for in R.S. 47:304, the purchaser, in order to avail himself of the alternative remedy provided by this Section, shall remit protested sales or use tax to the selling dealer, and shall retain copies of documentation evidencing the amount of the sales or use tax paid to the dealer on the transactions. On or before the twentieth day of the month following the month of the transactions on which the selling dealer charged the tax, the purchaser *1240 shall inform the department by certified mail or other reasonable means of the dates and amounts of the protested taxes that were charged by the selling dealer, and shall give notice of the purchaser's intention to file suit for recovery of the tax.
(2) Upon receipt of this notice, the amount remitted to the Department of Revenue or the amount of protested taxes that have been paid to the selling dealer shall be placed in an escrow account and held by the secretary or his duly authorized representative for a period of thirty days. If suit is filed for recovery of the tax within the thirty-day period, the funds in the escrow account shall be further held pending the outcome of the suit.
(3) If the taxpayer prevails, the secretary shall refund the amount to the claimant, with interest at the rate established pursuant to R.S. 13:4202(B) from the date the funds were received by the Department of Revenue or the due date, determined without regard to extensions, of the tax return, whichever is later, to the date of such refund. Payments of interest authorized by this Section shall be made from funds derived from current collections of the tax to be refunded.
. . . .
At the heart of this case is Subsection (A)(1)(b) that was added in 1999 to clarify the nature of the action for a refund of sales and use taxes paid under protest. See 1999 La. Acts, No. 200, § 1.
Act 200 established a new method of paying sales and use taxes under protest to eliminate some of the confusion as to who is the proper party to make such a protest.[8] 10 DAVID R. CASSIDY, JOURNAL OF MULTISTATE TAXATION AND INCENTIVES: BUYER-TAXPAYER CAN DIRECTLY PROTEST SALES TAX PAYMENTS, 48 (Mar./Apr.2000). Louisiana R.S. 47:1576 now specifies what the purchaser[9] must do in order to avail himself of the alternative remedy provided by that section. The purchaser shall: (1) remit the protested sales taxes to the selling dealer; (2) retain copies of the documentation evidencing the amount of the sales or use taxes paid to the dealer; (3) timely notify the Department of the dates and amounts of the protested taxes and of the purchaser's intent to file suit for recovery of the tax; and (4) timely file suit for recovery of the tax. See LSA-R.S. 47:1576(A). On receipt of the purchaser's notice, the amount of protested sales taxes that has been paid by the purchaser to the selling dealer and remitted by the selling dealer to the Department shall be placed in an escrow account. LSA-R.S. 47:1576(A)(2). Because Gathering and Operating are the purchasers/taxpayers and *1241 because they did not personally comply with the statutory requirements for protesting the tax payments, the Department urges that the requirements of LSA-R.S. 47:1576 were not satisfied.
An action can be brought only by a person having a real and actual interest that he asserts. LSA-C.C.P. art. 681. Clearly, Section 1576, as amended in 1999, does not extend the selling dealer, Power, the remedy being sought in the original petition filed in this case; that remedy, instead, belongs to Power's customers, including Gathering and Operating.
In general, LSA-C.C.P. art. 694 provides for the use of an agent and states:[10]
An agent has the procedural capacity to sue to enforce a right of his principal, when specially authorized to do so.
For all procedural purposes, the principal is considered the plaintiff in such an action. The defendant may assert any defense available against the principal, and may enforce his rights against the principal in a reconventional demand.
Louisiana R.S. 47:1576 neither authorizes nor precludes an action by the purchaser's agent or the purchaser's representative.[11] The Department urges that the tax laws are sui generis[12] and that Power, Gathering, and Operating should not be allowed to rely on LSA-C.C.P. art. 694 and the laws on mandate (LSA-C.C. arts. 2989 through 3000) to establish that Power had procedural capacity to file a suit to enforce the rights of Gathering and Operating under LSA-R.S. 47:1576. Although the Department asserts that allowing a selling dealer to act as an agent for its customers for purposes of pursuing a refund of sales taxes paid under protest would be problematic from an accounting standpoint, the Department acknowledges that it willingly deals with countless agents for various taxpayers all of the time.[13] Therefore, the Department is seeking to have this court essentially fashion a rule that would eliminate representation by only one type of agent in this context, i.e., to preclude anyone from acting as the purchaser's agent or to simply prohibit the selling dealer from acting in such a capacity. The fashioning *1242 of such a rule lies within the province of the legislature, not this court.
In a prior case, this court indicated, albeit in dicta, that one can serve as a mandatary in a tax matter. See Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 896 (La.1993) (wherein the cable company, without purporting to be the agent of its customers, sought to recover sales tax monies paid by its customers. This court indicated that the cable company might have survived an objection of no right of action had it been acting as an agent for its customers in the suit for a refund of taxes paid under protest.). See also United Artist Theater Circuit, Inc. v. City of New Orleans, 95-17 (E.D.La.1996) 1996 WL 46709 (wherein the operators of movie theaters sought to recover sales taxes paid by its customers, but did not do so as an authorized agent of the taxpaying moviegoers).
A person who has procedural capacity may appoint an agent to assert the person's claim. To institute and prosecute the action to enforce the rights of his principal, however, the agent must be specially authorized to do so by the principal. LSA-C.C.P. art. 694, Official Revision Comments-1960, comment (b), citing Frazier v. Willcox, 4 Rob. 517 (La.1843); Wallace, Lithgow & Co. v. Byrne, 17 La.Ann. 8 (1865); Casanas v. Audubon Hotel Co., 124 La. 786, 50 So. 714 (1909). Furthermore, a person may represent another person in legal relations as provided by law or by juridical act. LSA-C.C. art. 2985. The authority of the representative may be conferred by a contract of mandate. LSA-C.C. art. 2986. "A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." LSA-C.C. art. 2989.
In its March 14, 2005 petition, Power did not disclose that it was filing suit in the capacity as the agent of Gathering and Operating. The Department urges that if Power was suing to enforce the rights of its principals, it had a duty to disclose that fact and to identify the principals.[14] Because Power did not initially disclose the agency relationship, the Department essentially maintains that Power should be precluded from amending its petition to allege that it was acting as an agent for Gathering and Operating when it filed the March 14, 2005 petition.
This argument overlooks the following provisions of the law: LSA-C.C. art. 2989 and LSA-C.C.P. arts. 700 and 934. Under LSA-C.C. art. 2989, a principal may confer authority on a mandatary to act either in his own name or in the name of the principal. The principal may, therefore, be either disclosed or undisclosed. LSA-C.C. art. 2989, Revision Comments-1997, comment (c). Nonetheless, on an exception of no right of action, *1243 the named plaintiff is called on to disclose the mandate relationship to establish that he has a right to proceed with the suit. Since the ground of such an exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. See LSA-C.C.P. art. 934. Furthermore, LSA-C.C.P. art. 700 addresses the situation where the plaintiff's authority or qualification to sue in a representative capacity is questioned and provides:
When a plaintiff sues as an agent to enforce a right of his principal, or as a legal representative, his authority or qualification is presumed, unless challenged by the defendant by the timely filing of the dilatory exception. When so challenged, the plaintiff shall prove his authority or qualification on the trial of the exception.
In light of these codal provisions, we do not find Power's failure to disclose its agency relationship with Gathering and Operating in its original petition fatal to its action against the Department.
In its supplemental and amending petition, Power disclosed that it was acting as an agent for Gathering and Operating in the instant action. Thus, by the supplementation and amendment of its petition, Power complied with any rule that may require disclosure in the petition of the principals on whose behalf a petition was filed.[15]
By filing an exception to Power's supplemental and amending petition, the Department timely challenged Power's authority to file a suit for refund of taxes paid under protest on behalf of Gathering and Operating. However, its challenge simply raised the legal issue of whether LSA-C.C.P. art. 694 and the law of mandate can be used to establish Power's right of action and/or procedural capacity in this type of action. As previously indicated, the Department's argument in this respect lacks merit.
Notably, at no time did the Department dispute the existence of a contract of mandate between Power, Gathering, and Operating or challenge whether prior to January 20, 2005, Gathering and Operating had "specially authorized" Power to sue to enforce their rights under LSA-R.S. 47:1576. Nonetheless, we note that the record from the hearing on the exception establishes that the officers of Gathering and Operating authorized Power to actually protest the Department's interpretation of LSA-R.S. 47:301(14) and to seek a refund of the sales taxes paid. Power was expressly authorized to act as their agent in giving notice to the Department that they had paid the sales taxes under protest and that they intended to file suit. This evidence establishes that Gathering and Operating authorized Power to act on their behalf with respect to the requirements imposed by LSA-R.S. 47:1576.
Because Power was a duly authorized representative of Gathering and Operating, empowered to file a judicial demand on their behalf, Power has authority to bring an action on behalf of Gathering and Operating for refund of sales taxes paid under protest. Furthermore, having found that the laws on representation and mandate apply in this context, we find no merit in the Department's alternative argument that the authority afforded by LSA-C.C.P. art. 694 can not be expanded to include the procedural capacity to satisfy the other requirements imposed by LSA-R.S. 47:1576. Surely, if Gathering and Operating can by act of mandate authorize Power to file suit on their behalf under LSA-R.S. 47:1576, they can also by *1244 act of mandate authorize Power to satisfy the statutory notice requirements that are a prerequisite to the filing of such an action.
Under the facts of this case, even though Power did not disclose the identity of its principals/customers in the notice provided to the Department on January 20, 2005, the Department has not shown that it was prejudiced by the lack of disclosure. The Department received sufficient notice that the specified taxes were being protested so as to enable it to comply with the escrow requirements of LSA-R.S. 47:1576(A)(2) and to thereafter refund the amount of taxes paid under protest in the event the purchasers/taxpayers prevailed in a subsequently filed suit for recovery of the protested taxes. See LSA-R.S. 47:1576(A)(3). Any such judgment would identify the party or parties in whose favor the refund is awarded, which would allow for payment of the refund by the Department. A contrary result would be inequitable and would entitle the State to a potential financial windfall merely because a mandatary was acting on behalf of its principals in fulfilling the requirements of LSA-R.S. 47:1576.

CONCLUSION
Accordingly, the exception of no right of action was properly overruled by the court of appeal.[16] The decision of the appellate court is affirmed.
AFFIRMED.
CLARK, Justice, dissenting for reasons assigned by Justice Guidry.
I dissent from the majority opinion for the reasons assigned by Justice Guidry.
GUIDRY, Justice, dissents and assigns reasons.
For the following reasons, I conclude the court of appeal erred in reversing the trial court to find the plaintiff, J-W Power (Power), may serve as an agent for its customers in connection with a demand for the refund of sales taxes paid under protest pursuant to La. R.S. 47:1576.
The principal question is whether Power has a right to bring the action to recover its customers' taxes paid under protest. In Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 895-896 (La. 1993), this court articulated the following:
An action can be brought only by a person having a real and actual interest which he asserts. La.Code Civ.Proc. art. 681. When the facts alleged in the petition provide a remedy to someone, but the plaintiff who seeks the relief for himself is not the person in whose favor the law extends the remedy, the proper objection is an exception of no right of action. This exception raises the question whether the plaintiff has any interest in judicially enforcing the right asserted. La.Code Civ.Proc. art. 927(5); G.I. Joe Inc. v. Chevron U.S.A., Inc., 561 So.2d 62 (La.1990); Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972).
In my view, Power has no real or actual interest in judicially asserting an action for a refund of taxes paid by its customers. While Power collected the taxes and paid it to the Department, Power did not pay any portion of the tax itself. Cox, 624 So.2d at 895 ("Therefore, [a cable television franchisee] does not have a real and actual interest in judicially asserting an action for a refund of taxes paid by someone else. Only the cable television subscribers *1245 may bring an action against the City to collect taxes improperly imposed upon and paid by them."); Krauss Co. v. Develle, 236 La. 1072, 110 So.2d 104, 106 (1954) ("[C]ustomers, having paid these taxes, alone would have the right to seek their refund. The [merchant] plaintiffs have no right to champion of the consumers.").
In addition to neither customer being named as a plaintiff in the action, it is more problematic that Power did not reference in its petition that it was acting as an authorized agent of its customers. Power also failed to provide supporting documentation of the existence of an agency relationship or the amounts owed to each of its customers. I disagree with the majority that the Department is not prejudiced by Power's four-year failure to disclose its agency authority. As this court pointed out in Cox Cable, "[o]ne purpose of the exception of no right of action is to protect a defendant from having to defend an action and possibly to pay a claim which actually belongs to a party other than the plaintiff." Id., 624 So.2d at 895. With this in mind, the majority places an undue burden on the Department of having to file an exception of no right of action simply to determine the identities of those parties with a vested interest in the litigation due to the plaintiff's knowing and intentional failure to disclose the existence of an alleged agency relationship. The Department raises a legitimate concern that it does not have the personnel or financial resources to ferret out those parties with a viable cause of action when those without legal authority institute suit on their behalf. This concern is further compounded with the Department's foreseen problems of having to ensure that other tax liabilities of a party entitled to a refund are properly offset before the contested taxes are reimbursed, as well as having to ensure payment is being made to the proper party. Accordingly, I respectfully dissent.
NOTES
[1] This matter is before the court on an exception raising the objection of no right of action. Notably, evidence is admissible on the trial of an objection of no right of action to "support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." See LSA-C.C.P. art. 931. Therefore, much of the factual background in this case was obtained from the pleadings.
[2] Power and Gathering are individual, wholly-owned subsidiaries of Operating. Neither Power nor Gathering owns any part of the other.
[3] The Department also filed an exception raising the objection of no cause of action, which was denied.
[4] Quoted infra.
[5] In the original petition, Power prayed for a declaration that the new revenue ruling and its interpretation of LSA-R.S. 47:301(14) as applied to natural gas compressors and natural gas-compression services be rejected. Because Power's suit was dismissed pursuant to the Department's exception, the issue of declaratory relief was never addressed.
[6] See LSA-C.C.P. art. 700 (quoted infra), which addresses the authority of a plaintiff suing in a representative capacity.
[7] LSA-R.S. 47:1576 is found in Chapter 18, of Subtitle II, titled "Provisions Relating to Taxes Collected and Administered by the Collector of Revenue," which comprises LSA-R.S. 47:1501 through 1691.
[8] Before the 1999 amendment, actions of this nature were governed by a general provision similar to that found in LSA-R.S. 47:1576(A)(1)(a). Interpreting that law, this court held that only the taxpayer had standing to sue for a refund of tax monies paid under protest. Because the sales taxes were imposed on the consumer/purchaser, this court held that the dealer did not have a beneficial interest in a claim for refund of sales taxes collected by it from customers. See Krauss Co. v. Develle, 236 La. 1072, 110 So.2d 104, 105 (1959), citing Kesbec, Inc. v. McGoldrick, 278 N.Y. 293, 16 N.E.2d 288, 290 (1938). Krauss is distinguishable because the suits were not brought by the dealers for or on behalf of their customers. Instead, the dealers themselves were attempting to recover the refund of the tax. Accordingly, the dealers' claims for a refund for sales taxes paid under protest were dismissed. Id.
[9] A "purchaser" includes any person who acquires or receives any tangible personal property, or the privilege of using any tangible personal property, or receives any services pursuant to a transaction subject to sales and use taxes. See LSA-R.S. 47:301(9).
[10] The Code of Civil Procedure continues to use the common law term "agent" rather than the term "representative" or "mandatary." The common law term "agency" was eliminated from the Louisiana Civil Code in the 1997 revision. See LSA-C.C. art. 2986, Revision Comments-1997, comment (a); Hoskin v. Plaquemines Parish Government, 98-1825 (La.App. 4 Cir. 8/4/99), 743 So.2d 736, 738 n. 2.
[11] Contrast LSA-R.S. 51:1409 (authorizing "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, [to] bring an action individually but not in a representative capacity to recover actual damages"). The jurisprudence indicates that this statute precludes the use of a class action in this context. Indest-Guidry, Ltd. v. Key Office Equipment, Inc., 08-599 (La.App. 3 Cir. 11/5/08), 997 So.2d 796, 810, writ denied, 08-2851 (La.2/6/09), 999 So.2d 782, citing State ex rel. Guste v. General Motors Corp., 370 So.2d 477, 483 (La. 1978) (Dennis, J. concurring).
[12] A taxpayer does not have a right of action under Louisiana Civil Code theories of tort or contract to recover interest on taxes not paid under protest due to sui generis nature of tax statutes. Atlantic Pacific Marine Corp. v. State, 94-0243 (La.App. 1 Cir. 12/22/94), 648 So.2d 1069, 1071, writ denied, 95-0165 (La.3/24/95), 651 So.2d 288.
[13] For example, the Department acknowledged that taxpayers are represented on a daily basis by attorneys, certified public accountants, curators/curatrixes, tutors/tutrixes, and numerous other mandataries.
[14] In Reisz v. Kansas City Southern R. Co., 148 La. 929, 88 So. 120 (1921), this court stated that the practice of suing by one party for the use and benefit of another has been recognized by this court in a number of cases and that Louisiana Code of Practice article 320 "by the strongest kind of implication indicates that a suit may be brought in the name of an agent, if he disclose the name, etc., of his principal." Reisz, 88 So. at 121. Louisiana C.P. art. 320 (1870) provided:

The defendant may refuse to answer to the merits, if he has good ground for such refusal, as if the suit is brought by one pretending to act as the attorney in fact of the plaintiff, and he fail to annex to the petition a copy of his power of attorney, or by a minor without being assisted by his tutor or by a married woman without the authorization of her husband or of the court.
The language in question in this article was not incorporated into the Louisiana Code of Civil Procedure.
[15] See Reisz, 88 So. at 121; see also LSA-C.C.P. art. 700.
[16] In so ruling, we render no opinion as to the timeliness of Power's actions since those issues are not before us at this time.